**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Atlantic Casualty Insurance Company,

Plaintiff, Case No. 1:22-cv-4546-MLB

v.

Sherry Phillips, et al.,

Defendants.

________________________________/

**OPINION & ORDER**

This is a declaratory judgment action before the Court on Plaintiff Atlantic Casualty Insurance Company's Motion for Summary Judgment. (Dkt. 82.) Defendant Leonard Willis opposes.[1] (Dkt. 94.) The Court grants Plaintiff's motion.

---

[1] Defendants Sherry Phillips and William Roper do not respond. Still, the Court "cannot base the entry of summary judgment [against these Defendants] on the mere fact that the motion [i]s unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property Located at 5800 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

## I. Background[2]

### A. The Underlying Lawsuit

In March 2022, Defendant Willis (a homeowner) filed a complaint in state court against Defendants Sherry Phillips (who owns a company known as All Trades Handicraftsmen) and William Roper (her husband who worked with her at that company).[3] (Dkts. 1-1 at 2; 85-1 at 8.) Willis

---

[2] The Court uses the parties' proposed facts and responses as follows. As Phillips and Roper did not respond to Plaintiff's motion, the Court deems Plaintiff's Statement of Material Facts admitted as to them. *See* LR 56.1(B)(2)(a)(2), NDGa. As for Plaintiff and Willis, when a party does not dispute the other's fact, the Court accepts it for purposes of summary judgment and cites the proposed fact and corresponding response. When one side admits a proposed fact in part, the Court includes the undisputed part. When one side denies the other's proposed fact in whole or in part, the Court reviews the record and determines whether a factual dispute exists. If the denial lacks merit, the Court deems the fact admitted so long as the record citation supports it. If a fact is immaterial, it is excluded. If a fact is stated as an issue or legal conclusion, it is excluded. *See* LR 56.1(B)(1)(c). Where appropriate, the Court modifies one party's fact per the other's response when the latter better reflects the record. Finally, as needed, the Court draws some facts directly from the record. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

[3] Willis objects to this fact and others derived from the pleadings in the underlying lawsuit, arguing Plaintiff improperly cites to a pleading rather than evidence in violation of the Court's local rules. (*See, e.g.*, Dkt. 95 ¶ 16.) The Court finds no error. Plaintiff offers the pleadings in the underlying lawsuit to show the allegations in the complaint exist. Further, Phillips and Roper seek coverage, indemnification, and/or a

alleged he had contracted with Phillips and Roper to make repairs to his home, specifically, to remove and replace siding on the east side of his home, remove and replace siding on his chimney, repair siding under the eaves of the second story, and repair damaged fascia and soffit boards along the roof line. (*Id.* ¶ 5.) Willis alleged that, while nailing siding to his home, Phillips and Roper hit an electrical service line and started a fire. (*Id.* ¶¶ 6, 10; Dkt. 95 ¶ 13.) The fire damaged his home, his personal property, and the surrounding grounds. (Dkt. 1-1 ¶ 11.) He alleged claims for negligence, interference with enjoyment of property, breach of warranty, and breach of contract. (*Id.* at 3–5.) Willis also sought costs and attorneys' fees under O.C.G.A. § 13-6-11. (*Id.* at 5.)

**B. The Policy and Its Classification Limitation Endorsement**

Before the fire, Plaintiff had issued a commercial general liability insurance policy to Phillips for her operation of All Trades Handicraftsmen. (Dkt. 95 ¶ 2.) The policy contained a Classification Limitation Endorsement that states the policy only covers claims that

---

legal defense from Plaintiff for the allegations in the underlying lawsuit's complaint. *Allstate Prop. & Cas. Ins. Co. v. Fowler*, 2022 WL 3636599, at *1, n.2 (N.D. Ga. Aug. 23, 2022).

arise "out of the classification(s) shown on the [policy] Coverage Declarations." (Dkt. 1-2 at 25.) The Coverage Declarations included an Insurance Services Office ("ISO") classification code for "Handyperson," ISO Code 95625, meaning the policy covers Phillips for work she and her company provided as a "Handyperson." (Dkts. 1-2 at 9; 95 ¶ 6.) The policy also states, "the definition(s) used for the classification(s) in the policy are those defined and maintained by the [ISO]." (Dkt. 1-2 at 25.) The ISO provides the following definition of "Handyperson" in Code 95625:

> **Note**
>
> This classification applies to an insured who is hired to do a variety of miscellaneous work for others, usually involving minor repairs in a household environment. This may also include an insured licensed in a particular trade or trained as a professional artisan, provided the work performed is not related to the insured's trade or license. . . .
>
> **Contemplated Operations**
>
> This classification is assigned to risks that provide a variety of maintenance-type services to their clients. The key to assigning code 95625 is that the risk is involved in offering a variety of services to their clients . . . . [T]he services must involve minor repair work including, but not limited to small painting work, minor drywall repairs, minor carpentry repairs, fixing or replacing broken windows, screens, or locks, patching a roof, and cleaning gutters. Handypersons may also

> install items such as ceiling fans and place caulking around windows, doors and other openings. . . .
>
> Risks assigned to code 95625 can be licensed in or specialize in a particular trade and use code 95625 on jobs where they perform work unrelated to this trade. For example, in order to keep their employees busy, a drywall contractor takes on jobs performing handyman services as mentioned earlier. Code 95625 applies as long as the work does not involve drywall work. If the insured is performing drywall work, such as patching a hold or repairing drywall – that job will not be assigned to code 95625.
>
> Code 95625 cannot be assigned to any work that requires a licensed tradesperson to perform the work. . . .
>
> Effective 4/1/13 – The note to this classification was change [sic] to allow licensed contractors performing work not related to their trade on a job to be assigning to code 95625 for that job. . . .

(Dkt. 1-4 at 2–3 (emphasis in original).)

The policy also contains an endorsement, specifying that the insurer:

> [W]ill pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and the duty to defend the insured against any "suit" seeking covered damages. We will have the right, but not the duty, to defend any insured against any "suit" for which we dispute coverage. We will have no duty to defend or indemnify any insured against any "suit" seeking damages for "bodily injury" or "property damage" where there is no coverage under the policy. We will have the right, but not the duty, to defend those qualifying as an additional insured by way of an additional insured endorsement.

(Dkt. 1-2 at 40.) So Plaintiff has a duty to defend and indemnify Phillips against a suit seeking damages for "bodily injury" or "property damage" arise from her or her company's work as a Handyperson.

### C. Procedural History

Phillips tendered the state lawsuit to Plaintiff for a defense, and Plaintiff assumed the defense under a reservation of rights. (Dkt. 95 ¶ 21.) In November 2022, Plaintiff filed this declaratory judgment action against Phillips and the other defendants asking the Court to declare Plaintiff is not obligated to indemnify or defend Phillips or Roper in the underlying lawsuit. (Dkt. 1 at 25.) Phillips and Roper answered and asserted a counterclaim for declaratory relief. (Dkt. 10 at 1–11.) Willis also answered. (Dkt. 11.) Plaintiff moves for summary judgment on its claims, Phillips's and Roper's counterclaim, and Defendants' defenses. (Dkt. 82.) Willis opposes. (Dkt. 94.) The Court held a hearing on Plaintiff's motion on August 28, 2024.[4]

---

[4] In its reply brief and at the hearing, Plaintiff said Willis lacked standing to assert coverage defenses because he is not a named or additional insured. (Dkts. 95 ¶ 23; 101 at 2.) The Court ordered the parties to further brief the issue. (Dkts. 110, 111, 112.) Plaintiff now acknowledges "there is dicta suggesting [Willis's] right to be heard in this action."

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

(Dkt. 111 at 1.) The Court concludes its more than dicta and does not address the issue further.

## III. Discussion

### A. Plaintiff's Claims[5]

In Count I, Plaintiff alleges Phillips's work on Willis's home fell outside the unambiguous ISO definition of "Handyperson." (Dkt. 1 ¶¶ 20–25.) Plaintiff thus argues, it has no duty to defend or indemnify Phillips for any claims or losses arising from the fire. (Dkt. 82 at 11–14.) Under Georgia law, an insurer's duty to defend and its duty to indemnify are separate and independent obligations. *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565 (1997). So the Court discusses each separately.

#### 1. Duty to Defend

The Georgia Court of Appeals has explained that "an insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured." *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 231 Ga. App. 206, 207 (1998) (citations omitted). "If the facts as alleged in the complaint even arguably

[5] Plaintiff raises six claims seeking a declaration that it is not obligated to defend or indemnify Phillips or Roper in the underlying lawsuit. (Dkt. 1 ¶¶ 20–47, at 25.) Since the Court concludes Plaintiff's first claim (related to the Classification Limitation Endorsement) warrants the relief sought, it does not address Plaintiff's other claims.

bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *Id.* "For an insurer to be excused under Georgia law from its duty to defend an action against its insured, the allegations of the complaint must unambiguously exclude coverage under the policy." *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012). Insurance policies are contracts under Georgia law, obligating the Court to enforce the policy's clear and unambiguous terms. *Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co., Inc.*, 288 Ga. 749, 750 (2011).

"[B]ecause the Classification Limitation Endorsement is a narrowing clause that limits the [policy's] otherwise-broad coverage, it is in the nature of an exclusion." *Evanston Ins. Co. v. Lett*, 2012 WL 4927958, at *5 (S.D. Ala. Oct. 15, 2012). So Plaintiff bears the burden of proving it applies. *See Nationwide Mut. Fire Ins. Co. v. Erwin*, 240 Ga. App. 816, 525 S.E.2d 393, 395 (1999) (an insurer seeking to invoke an exclusion to deny coverage has the burden of showing the existence of an exclusion and its applicability to the facts).

As explained above, the ISO definition of "Handyperson" states that the classification "cannot be assigned to any work that requires a licensed

tradesperson to perform the work." (Dkt. 1-4 at 3.) Plaintiff contends Georgia law required Phillips and Roper to be licensed residential contractors to perform the work at Willis's home. So Plaintiff claims Phillips and Roper were not working under the Handyperson classification and the Classification Limitation Endorsement excludes coverage. (Dkt. 82 at 11–12.)

Plaintiff explains Georgia law provides "no person, whether an individual or a business organization, shall have the right to engage in the business of residential contracting or general contracting without a current, valid residential contractor license or general contractor license[.]" *See* O.C.G.A. § 43-41-17 (a). Georgia law defines "contracting" as "performing or causing to be performed any of the activities set forth in [O.C.G.A. § 43-41-2 (4) and (9)]. *See* O.C.G.A. § 43-41-2 (3). "Contractor" means "a person . . . who, for compensation, contracts to . . . perform[ ] . . . the construction or improvement of, addition to, or the repair, alteration, or remodeling of any . . . building . . . for use by the owner or by others or for resale to others." *See* O.C.G.A. § 43-41-2 (4). Georgia law next defines a "residential contractor" as "any contractor who may contract for . . . and perform any activity or work as a contractor

requiring licensure . . . for a fixed fee . . . where such activity or work falls into the category of residential-basic contractor . . . and where the total value of the work or activity or of the compensation to be received by the contractor for such activity or work, whichever is the higher, exceeds $2,500." *See* O.C.G.A. § 43-41-2 (9). Finally—and most importantly—Georgia law defines a "residential-basic contractor" as "a person who performs contractor work or activity relative to detached one-family and two-family residences and one-family townhouses not over three stories in height and their accessory buildings and structures." *See* O.C.G.A. § 43-41-2 (10).

At the August 28 hearing, Willis conceded Phillips and Roper needed a residential-basic contractor license to perform the work on his house.[6] (Dkt. 110.) Willis says that does not matter, however, because the Classification Limitation Endorsement does not exclude coverage for work performed by a residential contractor. He argues Plaintiff conflates "licensed tradesperson" and "residential contractor," when they mean

---

6 The parties agree that project cost $4,700—an amount well above the $2,500 threshold set by Georgia law. (Dkt. 95 ¶ 11.)

different things. (Dkt. 94 at 12.) He claims the former is ambiguous and thus must be construed in his favor. (*Id.* at 13.)

The ISO Code does not define "licensed tradesperson." "When Georgia courts construe words that are left undefined in an insurance policy, they often turn to dictionaries 'because they supply the plain, ordinary, and popular sense unless the words are terms of art.'" *Lyons v. Allstate Ins. Co.*, 996 F. Supp. 2d 1316, 1320 (N.D. Ga. 2014) (quoting *W. Pac. Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 678 (2004)). "Tradespeople" is defined as "people engaged in trade." *See* Merriam-Webster.com (www.merriam-webster.com/dictionary/tradespeople). "Trade" is defined as "an occupation requiring manual or mechanical skill." *See* Merriam-Webster.com (www.merriam-webster.com/dictionary/trade). "Manual" means "of, relating to, or involving the hands," and "mechanical" means "of or relating to machinery" or "produced or operated by a machine or tool." *See* Merriam-Webster.com (www.merriam-webster.com/dictionary/manual); Merriam-Webster.com (www.merriam-webster.com/dictionary/mechanical). A residential-basic contractor must have a license. So the question is

whether a residential-basic contractor under Georgia law is a person engaged in an occupation that requires manual or mechanical skill.

The State of Georgia says they are. As explained, under state law, a residential-basic contractor includes a person who is paid a certain amount to construct, improve, repair, alter, or remodel a single-family home.[7] O.C.G.A. § 43-41-2 (4), (9), (10). The nature of this occupation undoubtedly requires manual or mechanical skill. State law makes that even clearer by setting competency or experience requirements for this licensure. The State of Georgia has decided a person can obtain a residential-basic contractor license only if he or she (among other things) has at least two years of proven experience working as or in the employment of a residential contractor and has had significant

[7] The definition of "residential contractor" necessarily implicates the definition of "contractor," as it says the term means "any **contractor** who may contract for . . . and perform any activity or work as a **contractor** requiring licensure . . . for a fixed fee . . . where such activity or work falls into the category of residential-basic contractor . . . ." O.C.G.A. § 43-41-2 (9) (emphasis added). It likewise implicates the type of involved by referencing "residential-basic contractor," which includes work on a detached one-family or two-family residence or one-family townhouse not over three stories in height and their accessory buildings and structures. O.C.G.A. § 43-41-2 (10). Accordingly, the Court provides the complete definition that applies here because of all these definitions. O.C.G.A. § 43-41-2 (4), (9), (10).

responsibility for the successful performance and completion of at least two projects falling within the residential-basic category in the two years immediately preceding his or her application. O.C.G.A. § 43-41-6 (b). By imposing these requirements, the State ensures that a residential-basic contractor has the manual or mechanical skills necessary to perform contracting work on someone's home.

The "Handyperson" Code also supports this reading. The Code says "[r]isks assigned to code 95625 can be licensed in or specialize in a particular trade and use code 95625 on jobs where they perform work unrelated to this trade." (Dkt. 1-4 at 3.) It reiterates the inverse: "Code 95625 cannot be assigned to any work that requires a ***licensed tradesperson*** to perform the work." (*Id.* (emphasis added).) It also notes the Code was "change[d] [in 2013] to allow ***licensed contractors*** performing work not related to their trade on a job to be assigning to code 95625 for that job." (*Id.* (emphasis added).) The Code thus uses the terms "licensed tradesperson" interchangeably with the term "licensed contractor." The Code also states that the "Handyperson" classification "must involve minor repair work" like "small painting work, minor drywall repairs, minor carpentry repairs, fixing or replacing broken

windows, screens, or locks, patching a roof, and cleaning gutters. . . [and that] Handypersons may also install items such as ceiling fans and place caulking around windows, doors and other openings." (Dkt. 1-4 at 2–3.) None of this would require a residential-basic contractor license if it cost less than $2,500—suggesting that when the work requires a license, the Handyman classification does not apply.

Willis argues that "licensed tradesperson" contemplates skilled specialty work or a specialty trade (like HVAC, plumbing, or electrical work). (Dkt. 94 at 13–15.) But the definition does not suggest a person must possess such highly specialized skills to be considered a tradesperson.[8] The definition of a tradesperson encompasses many occupations requiring manual or mechanical skill—not just those with specialization. There is no basis for reading into the definition of a licensed tradesperson a requirement for a high level of skill as Willis suggests. Willis also points out that the "Handyperson" Code uses

8 The Court notes that the *Cambridge Dictionary* (www.dictionary/cambridge.org/us/) defines "trade" as "a job, especially one that needs special skill, that involves working with your hands." This doesn't change the calculus. The definition's use of "especially" shows "trade" includes both types of jobs that involve working with your hands—ones that need special skill *and* ones that do not.

"licensed in a particular trade," "professional artisan," and "not related to the insured's trade or license" in the singular tense, arguing that the Code thus prevents specialists who are licensed in *one* trade from using their expertise" to work as a Handyperson. (*Id.* at 14–15) The Court agrees that the Handyperson definition prevents a person who is licensed in a specific trade from performing that work under the Handyperson classification. That prohibition, however, doesn't arise from the definition's use of singular nouns as Plaintiff suggests. It arises from the express statement in the definition that a person "can be licensed in or specialize in a particular trade and use code 95625 on jobs where they perform work *unrelated to this trade*." (Dkt. 1-4 at 3 (emphasis added).) It provides a specific example to drive this point home, explaining:

> [I]n order to keep their employees busy, a drywall contractor takes on jobs performing handyman services as mentioned earlier. Code 95625 applies as long as the work does not involve drywall work. If the insured is performing drywall work, such as patching a hold or repairing drywall – that job will not be assigned to code 95625.

(Dkt. 1-4 at 3.) This does not change the outcome. As discussed above, Phillips and Roper were working within their trade—residential-basic contracting—when they worked on Willis's house.

At the August 28 hearing, Willis said he cannot imagine how a "residential contractor" would ever be able to work under the "Handyperson" Code. For one thing, that does not matter. As discussed, the Code essentially allows someone to moonlight as a Handyperson by working outside of his or her specific licensure. That some people may moonlight outside their trade as a Handyperson does not mean that only those who can do so fall under the Handyperson classification. In other words, Defendant essentially asks the Court to impose a requirement that someone *must* have the ability to work outside of their licensure to qualify as a "licensed tradesperson." Such requirement is not contained in the Code. For another thing, a "residential contractor" certainly could perform work that falls outside his or her licensure. Cleaning gutters, small drywall repairs, replacing a window, a lock, or a screen, painting, and minor carpentry repairs—none of those things require a residential contractor license when the project falls under the $2,500 statutory threshold. Indeed, a person could likely perform many of these tasks (like cleaning gutters, replacing locks or screens, installing a ceiling fan, or caulking) at a cost above $2,500 without being considered a residential-basic contractor as those tasks could not be considered the construction,

repair, improvement, or alteration of a home. A residential-basic contractor thus can moonlight by performing those services.

Willis agrees Phillips and Roper were required to have a residential contractor license to perform the work on his house. Phillips and Roper thus were not acting as a Handyperson and the unambiguous language of the insurance policy excludes coverage for losses they caused. Plaintiff has no duty to defend Phillips and Roper in the underlying lawsuit, and the Court grants summary judgment for Plaintiff as to Count I on that basis.

**2. Duty to Indemnify**

Typically, an insurer's duty to indemnify "is not ripe for adjudication until the underlying lawsuit is resolved." *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019). But a court's determination that an insurer has no duty to defend "is dispositive of the duty to indemnify." *Travelers Indem. Co. of Ct. v. Peachstate Auto Ins. Agency*, 357 F. Supp. 3d 1259, 1264 (N.D. Ga. 2019); *see, e.g.*, *Nat'l Cas. Co. v. Pickens*, 582 F. App'x 839, 839 (11th Cir. 2014). Having determined Plaintiff is under no duty to defend Defendants Phillips and Roper in the state court suit, it necessarily

follows that Plaintiff has no duty to indemnify those Defendants, either. *See id.* The Court grants Plaintiff summary judgment on that basis as well.

**B. Phillips's and Roper's Counterclaim**

Phillips and Roper asserted a counterclaim for declaratory judgment, alleging Plaintiff's agent (Bingham Insurance Group) told them the policy they purchased covered their work installing siding. (Dkt. 10 at 8–11.) Plaintiff asserted in its statement of facts that Bingham is an independent insurance agent that used Plaintiff's general agent, Southern Specialty Underwriters, to obtain the policy for Phillips. (Dkts. 82 at 22–23; 82 ¶¶ 4-5.) Based on those facts, Plaintiff argues it had not no agency relationship with Bingham—whose employee allegedly misrepresented the scope of coverage to Phillips and Roper—such that it could be held liable for Bingham's misrepresentations. (Dkt. 82 at 23.) Plaintiff thus seeks summary judgment on this counterclaim.

Phillips and Roper did not respond or contest Plaintiff's factual assertion, and the Court sees no evidence to the contrary. Accordingly, the Court grants Plaintiff summary judgment on the counterclaim.[9]

## IV. Conclusion

The Court **GRANTS** Plaintiff's Motion for Summary Judgment as to Count I and as to Phillips's and Roper's counterclaim. (Dkt. 82).

**SO ORDERED** this 11th day of September, 2024.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

[9] Having determined no claims remain for trial, the Court need not determine whether Plaintiff is entitled to summary judgment on Defendants' defenses.